# PURCHASE AND SALE AGREEMENT

PARTIES:

| | |
|---|---|
| SELLER: | Woodforest Square, LLC, a California limited liability company, Chapter 11 Debtor and Debtor-in-Possession in Case No. 14-12682, pending in the United States Bankruptcy Court for the Central District of California (the "Debtor") |
| ADDRESS: | c/o David K. Gottlieb, in his capacity as Chapter 7 Trustee for Roger W. Meyer, Managing Partner of RCD Holdings, sole member of the Debtor<br>15233 Ventura Blvd., 9th Floor<br>Sherman Oaks, CA 91403 |
| BUYER: | WRE Management LLC, a Texas limited liability company (or its nominee/assignee) |
| ADDRESS: | One Riverway, Suite 1870<br>Houston, Texas 77056<br>Attn: Jason Ford, Vice President of Acquisitions |

ESCROW HOLDER /
TITLE COMPANY:   Chicago Title Company, 700 South Flower Street, Suite 800, Los Angeles, CA 90017, Attention: Joyce Strazzulla, NBU 27411-x52

BROKER FOR SELLER
AND BUYER:   Madison Partners

THIS AGREEMENT is made and entered into as of the 14th day of October, 2014 ("Effective Date") by and between Woodforest Square, LLC, a California limited liability company, Chapter 11 Debtor and Debtor-in-Possession in Case No. 14-12682, pending in the United States Bankruptcy Court for the Central District of California ("Seller"), and **WRE Management LLC**, a Texas limited liability company ("Purchaser" or "Buyer").

## RECITALS

A.   Seller is the owner of that certain retail shopping center containing 44,399 square feet of gross leasable area located at 12620 Woodforest Blvd., Houston, Texas 77015 and described in **Exhibit A** attached hereto, including all right, title and interest in and to any easements, covenants and other rights appurtenant to the land (and all improvements located on the land (collectively, the "Property").

  **B.** Purchaser desires to acquire and Seller desires to sell the Property on the terms and conditions set forth herein.

  **NOW THEREFORE,** in consideration of the mutual promises and covenants contained herein, the parties hereto agree as follows:

  1. <u>Agreement</u>. Seller agrees to sell, and Buyer agrees to buy, the Property on the terms and conditions set forth herein.

  2. <u>Purchase Price and Opening and Close of Escrow</u>. The purchase price of the Property shall be the sum of Five Million Eight Hundred Thousand and 00/100 Dollars ($5,800,000.00) ("Purchase Price") and shall be paid as follows:

  (a) Six Hundred Thousand and 00/100 Dollars ($600,000.00) (the "Deposit") shall be deposited with Escrow Holder on or before October 20, 2014.

  (b) The Deposit shall be applicable to the Purchase Price at Closing. The Deposit shall be non-refundable to Buyer unless (i) the Court Order Contingency under Section 6 is not satisfied, (ii) Seller defaults or fails or refuses to perform as required herein, or (iii) Buyer is not the Successful Bidder after the Back-Up Period, as provided herein.

  (c) The additional sum of Five Million Two Hundred Thousand and 00/100 Dollars ($5,200,000.00) plus Buyer's share of closing costs and proration shall be paid into Escrow on or before Close of Escrow, by certified check or wired funds.

  (d) Escrow Holder shall open an escrow account ("Escrow") for the purpose of consummating the transactions contemplated in this Agreement and such Escrow shall be opened on the date (the "Opening Date") when at least one copy of this Agreement, executed by Buyer and Seller, has been delivered to and signed by the Escrow Holder. Escrow Holder shall advise Buyer and Seller in writing of the Opening Date. Close of Escrow shall occur as soon as practicable after entry of the sale order, but no later than the fifth (5th) business day after the entry of an Order approving the sale ("Closing Date"). At Close of Escrow, the Deed (as defined below), the Assignment (as defined below) and other conveyancing documents shall be recorded as provided in this Agreement. Within five (5) days after the Opening Date, Escrow Holder shall deliver or cause to be delivered a Preliminary Title Report("PTR") pertaining to the Property setting forth all matters of record affecting title thereto or ownership thereof, accompanied by the recording information as to, and legible copies of, all items referred to in the PTR (collectively with PTR, "Title Documents").

  3. <u>Seller's Obligations</u>. Within five (5) days after the Effective Date, Seller, at its expense, shall deliver to Buyer the following in Seller's possession or

control (collectively hereinafter called the "Seller's Papers") and give written notice of such delivery ("the "Delivery Notice") to Buyer and Escrow Holder:

  (a) Copies of any surveys, environmental assessments, soils or geological reports, plans and specifications, and other engineering data and information pertaining to or relating to the Property.

  (b) Any and all other documents in Seller's possession and control pertaining to condition, use or operation of the Property.

All documents provided by Seller hereunder are being provided without any representation or warranty whatsoever as to accuracy, validity, correctness, or completeness.

  4. <u>Deposit Money</u>. Escrow Holder shall deposit the Deposit into a segregated, interest-bearing account for the benefit of Buyer. Buyer and Seller agree that the Deposit shall be (a) applied to the Purchase Price (with accrued interest) if the sale provided for in this Agreement is consummated; (b) refunded to Buyer (with accrued interest), if Buyer is not obligated to close (and does not close) as herein provided; or (c) upon Buyer's default, fully forfeited to Seller (with accrued interest) as Seller's liquidated damages as set forth below.

  5. <u>Due Diligence.</u> Buyer shall have until October 23, 2014 to complete its due diligence, including, but not limited to any and all other documents provided by Seller and/or title reports. In the event that the due diligence is not satisfactory to Buyer, Buyer is not obligated to close and may revoke its offer on or before October 23, 2014 at 10:00 a.m. (Pacific Time) and have the Deposit refunded to Buyer (with accrued interest) within two (2) business days of written notice (including email) that the due diligence is not satisfactory and that Buyer wishes to rescind its over.

  6. <u>Court Approval Contingency</u>. This consummation of sale is contingent on Seller obtaining an Order by the Bankruptcy Court, ordering that this sale is approved, and that title be conveyed free and clear of all monetary liens, including but not limited to the deed of trust now owned by Wells Fargo Bank, N.A. (f/k/a Wells Fargo Bank Minnesota, N.A.), as Trustee for the Registered Certificateholders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2004-C-2, which Order is in full force and effect at the close of escrow.

  7. <u>Intentionally Omitted</u>.

  8. <u>Back-Up Bidder Status</u>. If an alternate sale transaction with a Successful Bidder other than Buyer is selected by Seller and approved by the Bankruptcy Court, this Agreement shall not automatically terminate, or if Buyer submitted another higher or otherwise better bid at the Auction that is accepted by Seller as the highest or otherwise best bid but is not ultimately the Successful Bid ("Superseding Agreement"),

3

such Superseding Agreement between Seller and Buyer shall not terminate, and this Agreement or the Superseding Agreement, as the case may be, shall constitute a "back-up bid" which shall remain open for acceptance by Seller up to and including the earliest of: (i) nine (9) days after the entry of the Sale Order, or (ii) the date of the closing of the alternate sale transaction (the period in preceding clauses) (i) or (ii), as applicable, the ("Back-Up Period"). Buyer's designation as "back-up bidder" shall not modify any terms of this Agreement or the Superseding Agreement, as the case may be, subject to this Section. Upon the lapse of the Back-Up Period, if Seller does not elect to proceed with closing the transaction pursuant to this Agreement or the Superseding Agreement (as applicable), the Buyer's Deposit shall be promptly returned to Buyer.

9. Competing Transaction. This Agreement is subject to approval by the Bankruptcy Court and the consideration by Seller of higher and better competing bids (each a "Competing Bid"). From the date hereon and until the completion of the auction or as otherwise directed by the Bankruptcy Court, Seller is permitted to cause his representatives to initiate contact with, solicit or encourage the submission of any inquiries, proposals or offers by any person, solicit or encourage the submission of any inquiries, proposals or offers by any person, in addition to Buyer, in connection with any sale or other disposition of the Property, provided that such person enters into a non-disclosure agreement in favor of Seller and perform any other acts which area required under the Bankruptcy Code, including supplying information relating to the Property to prospective buyers.

10. Title Insurance. At Close of Escrow, Seller shall provide Buyer, at Seller's expense, with a standard coverage owner's policy of title insurance issued by Escrow Holder acting as title company (in this capacity, the "Title Company") in the full amount of the Purchase Price, effective as of the Close of Escrow, insuring that fee simple title to the Property is vested in Buyer (or its designee), subject only to the matters approved by Buyer ("Title Policy"). The policy shall contain such endorsements as are reasonably required by Buyer or its lender, but the incremental cost of the endorsements shall be the responsibility of Buyer. If Buyer wishes to purchase an extended coverage owner's title insurance policy, or any title insurance policy or policies in favor of a lender, the premiums for such policies and the cost for any required ALTA survey shall be paid by Buyer.

11. Conveyance of Property. On the Closing Date, Seller shall convey title to the Property to Buyer (or its designee) by General Warranty Deed (the "Deed"), in customary form supplied by Escrow Holder. Seller and Buyer shall also execute an Assignment of Leases, Bill of Sale and General Assignment (the "Assignment") in a form reasonably acceptable to both parties. On the Closing Date, Escrow Holder shall take the following actions (collectively, the "Closing" or "Close of Escrow"):

a) Combine and collate the counterparts of any instruments delivered in counterpart; date, as of the date of the Close of Escrow, all instruments calling for a date; and verify that any blanks in the documents are completed and all required exhibits are attached.

4

b) If necessary, prepare a separate documentary transfer tax statement in the form accompanying the form of the Deed (the "Documentary Transfer Tax Statement") and instruct the appropriate Office of the County Recorder (the "Recorder's Office") not to make the Documentary Transfer Tax Statement a part of the public record, as permitted by Section 11932 of the California Revenue and Taxation Code (or an equivalent statute in the State of Texas, if any);

c) Confirm and attach to the Deed (and any other applicable document) the correct legal description and Assessor's Parcel Number(s) applicable to the Property, if not already attached and included, then record the Deed in the Official Records of the County, and file the Preliminary Change of Ownership Report (or an equivalent statute in the State of Texas, if any) with the County Clerk concurrently with the recordation of the Grant Deed as appropriate;

d) Make all required filings with the federal and state tax authorities prior to the last date on which any such report is required to be filed, and concurrently deliver a copy of such filing to Buyer and Seller. Escrow Holder is hereby designated as the "real estate escrow person" responsible for determining and, if required, withholding the appropriate real estate withholding amounts from Seller's proceeds under applicable Texas and federal laws;

e) Give Seller and Buyer notice via telephone or e-mail that the Close of Escrow has occurred, send final closing statements to each party by e-mail or facsimile;

f) Deliver to Seller the following: (i) the Purchase Price, reduced by the amount of Seller's share of the closing costs, prorations, and any other amounts due, or to be withheld, from Seller; (ii) a copy of the signed federal Certification of Non-Foreign Status and a copy of the signed California Real Estate Withholding Certificate, and (iii) one original fully-executed Assignment.

g) Deliver to Buyer the following: (i) a conformed copy of the recorded Deed; (ii) the original of the executed federal Certification of Non-Foreign Status and the original of the executed California Real Estate Withholding Certificate (if any); (iii) one original fully-executed Assignment; and (iv) original and one copy of the Title Policy.

12. <u>Maintenance of Property Prior to Closing</u>.

(a) During the term of this Agreement, without the express written approval of Buyer (which approval shall not be unreasonably withheld or delayed), Seller shall not enter into, amend, terminate, waive the provisions of or take legal action with respect to any lease, license, agreement, easement or any other encumbrance (or allow any encumbrance, voluntarily or involuntarily) affecting the Property which may not be terminated prior to or at the Close of Escrow; provided, however, that Buyer shall have the right to consent to any such: (i) new lease, license, agreement, easement or any other encumbrance; (ii) amendment; (iii) termination; or (iv) waiver, in Buyer's sole and absolute discretion.

(b) <u>Insurance</u>. Seller will retain its current casualty and liability insurance coverage through the Close of Escrow.

(c) <u>Operation</u>. Seller or Seller's agent shall operate and maintain the Property in the ordinary course of business and substantially in accordance with Seller's past practices with respect to the Property, and shall make any and all repairs and replacements reasonably required to deliver the Property to Buyer at Closing in its present condition.

13. <u>Possession</u>. Possession of the Property shall be delivered to Buyer upon the Close of Escrow.

14. <u>Seller's Representations and Warranties.</u> Buyer's obligation to complete the Closing and consummate the transaction provided for herein shall be conditioned upon all of the following being true and accurate as of the date of Closing Date, none of such representations and warranties shall survive the Close of Escrow. As a material inducement to Buyer to enter into this Agreement, Seller hereby warrants and represents the following:

(a) Seller and all persons signing this Agreement on behalf of Seller, are authorized to sign this Agreement and perform all of Seller's obligations under this Agreement, subject to the Order of the Bankruptcy Court.

(b) Upon entry of the Order of the Bankruptcy Court, this Agreement has been duly authorized and executed, and all documents delivered to Escrow Holder or Buyer pursuant to the terms of this Agreement shall be duly authorized and executed, on behalf of the Seller and shall constitute Seller's valid and binding agreement, enforceable in accordance with its terms.

(c) Seller is the owner of the Property.

(d) Seller is not a "foreign person" as described in the United States Federal Income Tax Code and Income Tax Regulations, for the purposes of Section 1445(a) of the Internal Revenue Code, and Seller shall provide an appropriate certification at Close of Escrow on standard state and federal forms.

All of the representations and warranties made herein shall be true and accurate, to the best of Seller's knowledge, as of the Effective Date and as of the Close of Escrow. The execution and delivery by Seller of the Deed pursuant to this Agreement shall constitute confirmation and reaffirmation by Seller that the foregoing are true and correct on and as of the date of the Closing to the best of Seller's knowledge as though made on and at such time. The representations and warranties of the Seller and the Buyer contained in this Agreement shall not survive the Close of Escrow.

Except as expressly stated in this Agreement, Seller makes no representations or warranties whatsoever, and Buyer is purchasing based solely on its own investigations. Buyer shall be deemed to have accepted the condition of the Property in all respects "AS-

IS SUBJECT TO ALL FAULTS" except as may be expressly provided in this Agreement.

15. <u>Buyer's Representations and Warranties</u>

(a) Buyer is a limited liability company duly organized, validly existing and in good standing under the Laws of the State of Texas.

(b) Buyer has all requisite limited liability company power and authority to execute and deliver this Agreement and each other agreement to be executed by Buyer in connection with this Agreement (collectively, the "Purchase Documents"), to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.

(c) The execution, delivery and performance by Buyer of this Agreement and the other Purchase Documents to which Buyer is a party and the consummation of the transactions contemplated hereby and thereby have been duly authorized by all necessary limited liability company action on behalf of Buyer. This Agreement and the other Purchase Documents have been duly executed, authorized and delivered by Buyer and is the legal, valid and binding obligation of Buyer, enforceable against Purchaser in accordance with their respective terms.

16. <u>Limited Recourse to Seller.</u>

The Buyer expressly acknowledges and agrees that the Seller is executing this Agreement and entering into the transactions contemplated herein as a Chapter 11 Debtor and Debtor-in-Possession for the benefit of the bankruptcy estate ("Estate") and its creditors. This document is being executed by David K. Gottlieb, solely in his capacity as Chapter 7 Trustee ("Trustee") of the Bankruptcy Estate of Roger W. Meyer, the Managing Partner of RCD Holdings, sole member of the Seller and that in the event of any default in the performance of any of the Seller's, Trustee's or the Estate's obligations under this Agreement or in the event that any other claim is asserted against the Seller, the Trustee or the Estate in connection with this Agreement or the transactions, Seller and the Trustee (whether in his individual capacity or otherwise) shall in no event have any personal liability whatsoever, it being expressly understood and agreed that Buyer's sole recourse, if any, in such event shall be to the assets of the Estate.

17. <u>Closing Deliveries.</u>

(a) <u>Seller's Deliveries</u>. Seller shall deliver to Escrow Holder, at or before the Closing Date, the following documents:

(1) The Deed executed by Seller and properly notarized.

      (2) Affidavits of Non-foreign Status pursuant to the Foreign Investment in Real Property Tax Act, and pursuant to the companion Texas law on Escrow Holder's standard forms.

      (3) A signed estimated Escrow closing statement provided by the Escrow Holder.

      (4) The Assignment executed by Seller.

      (5) Such other documents as may be reasonably required of Seller to close the transaction, including, without limitation, such evidence of Seller's authority and authorization to enter into this transaction as the Escrow Holder or Title Company may reasonably require, including in order to issue to Buyer the Title Policy.

    (b) <u>Buyer's Deliveries</u>.  Buyer shall deliver, at or before the Closing Date, the following:

      (1) The Purchase Price, less Deposit, plus Buyer's share of Escrow fees and prorations.

      (2) A signed estimated Escrow closing statement provided by the Escrow Holder.

      (3) The Assignment signed by Buyer.

      (4) Such other documents and funds as may be reasonably required of Buyer to close the transaction contemplated herein.

  18. <u>Prorations and Closing Costs</u>.

    (a) Seller shall pay for County and any city transfer taxes and the premium for standard Owner's coverage title insurance.

    (b) Rents, income and expenses shall be prorated as of Close of Escrow.

    (c) Real estate taxes, and assessments not yet due and payable, shall be prorated as of Close of Escrow.

    (d) Escrow fees, recording and filing fees, shall be paid by Seller and Buyer in equal proportions (50/50).

    (e) All other closing costs shall be paid according to the custom in the County and State where the Property is located.

  19. <u>Defaults and Remedies</u>.  IF BUYER FAILS TO CONSUMMATE THIS TRANSACTION IN ACCORDANCE WITH THIS AGREEMENT DUE TO A

8

MATERIAL DEFAULT BY BUYER, THEN SELLER'S SOLE AND EXCLUSIVE REMEDY SHALL BE TO TERMINATE THIS AGREEMENT AND TO RECEIVE AND RETAIN FROM ESCROW HOLDER, BY WRITTEN REQUEST, THE DEPOSIT, TOGETHER WITH ANY EARNINGS THEREON, AS LIQUIDATED DAMAGES. THE PARTIES ACKNOWLEDGE THAT DAMAGES TO SELLER WILL BE DIFFICULT TO CALCULATE AND THAT AN AMOUNT EQUAL TO THE DEPOSIT IS A REASONABLE APPROXIMATION OF SUCH DAMAGES. SELLER SHALL HAVE NO RIGHT TO SPECIFIC PERFORMANCE.

_____ (Seller's Initials)             _____ (Buyer's Initials)

In the event of Seller's default hereunder that causes the Close of Escrow to fail, Buyer shall be entitled to terminate this Agreement and receive a refund of the Deposit; Buyer reserves the right to file a claim with the Bankruptcy Court under such circumstances.

20.  **Condemnation.**  In the event of any condemnation, taking, eminent domain, conveyance in lieu of condemnation, or similar procedure affecting or threatened to affect all or a material part of the Property subsequent to the Effective Date, Seller shall promptly notify Buyer thereof in writing, and Buyer shall have the option to terminate this Agreement on written notice to Seller within ten (10) business days after receiving Seller's notice (and the Closing Date shall be extended, if necessary, to accommodate such time period) and Buyer shall then be entitled to the immediate return of the Deposit (without any additional instructions, consent, or signature required from Seller). If this Agreement is not so terminated by Buyer, Seller shall assign to Buyer at the Close of Escrow, in lieu of conveyance of the Property, or such part of the Property as is the subject of such condemnation or conveyance in lieu of condemnation, Seller's right, title and interest, if any, to receive the condemnation proceeds or proceeds for sale in lieu of condemnation payable in connection with such taking or sale. In such event, Seller shall also deliver to Buyer at the Close of Escrow any condemnation proceeds or proceeds from a sale in lieu of condemnation which may have been received by Seller prior to the Close of Escrow. If Buyer does not terminate the Agreement as set forth in this Section above, Seller shall not settle any condemnation or related disputes without Buyer's prior written approval.

21.  **Brokerage Fees.**  Seller (not Buyer) agrees to pay through Escrow at Closing a broker's commission as authorized and approved in the Order of the Bankruptcy Court approving the Broker's retention by the Seller.

22.  **Risk of Loss.**  During the pendency of the Escrow, the risk of loss or destruction of the Property shall be Seller's. If the Property is damaged or destroyed during the pendency of the Escrow, Seller shall promptly provide written notice thereof to Buyer, and the following shall apply:

(a)  If the amount of the damage is greater than $100,000, Buyer may elect, as its sole remedy, to either: (i) accept an assignment of Seller's rights to insurance proceeds (plus payment by Seller of any deductible due in connection with

9

same) and close Escrow as provided herein, or (ii) terminate this Agreement and the Escrow, in which event the Deposit shall be returned to Buyer.

        (b)    If Buyer does not terminate the Agreement and Escrow as provided in Section 22(b) above, the Seller shall not settle any insurance claims or related disputes without Buyer's prior written approval.

        23.    <u>Notices</u>. All notices or other communications required or provided to be sent by either party or Escrow Holder shall be in writing, shall be delivered by one or more of the following methods and shall be effective as indicated below:

        (a)    by hand-delivery, in which event notice is deemed to be effective on the date that notice is received; or

        (b)    by United States Postal Service certified or registered mail, postage prepaid, in which event notice is deemed to be effective on the date which is three (3) days after the date on which notice is mailed; or

        (c)    by overnight delivery by a commercial entity which is in the business of providing overnight delivery service (fees prepaid) or by overnight United States Postal Service delivery (fees prepaid), in which event notice is deemed to be effective on the date following the date on which notice is properly deposited with such commercial entity or with the United States Postal Service; or

        (d)    by electronic facsimile or e-mail process, in which event notice is deemed to be effective on the date of electronic transmission properly made (if transmission is made before 5:00 PM Pacific time), or on the next business day after the date of electronic transmission properly made (if transmission is made after 5:00 PM Pacific time).

Notices shall be sent to the addresses shown below or at such other address or addresses (but neither party may designate a post office box for receipt of notices) as the parties or Escrow Holder may, from time to time, specify in writing, such changes to be made in a like manner:

    To Buyer:    Williamsburg Enterprises, Ltd.
                      One Riveway, Suite 1870
                      Houston, TX 77056

                      Attn: Jason Ford
                      Vice President of Acquisitions
                      Phone: (713) 391-8350
                      Facsimile: (713) 955-0957
                      Email: jford@williamsburgent.com

|              |                                           |
|--------------|-------------------------------------------|
| With a copy to: | Locke Lord LLP<br>2200 Ross Avenue, Suite 2200<br>Dallas, TX 75230<br>Attn: Shiva Delrahim Beck<br>Phone: (214) 740-8726<br>Facsimile: (214) 756-8296<br>Email: sdelrahim@lockelord.com |
| To Seller: | c/o David K. Gottlieb, Chapter 7<br>Trustee of the Bankruptcy Estate of<br>Roger W. Meyer, Managing Partner of RCD<br>Holdings, sole member of Chapter 11 Debtor<br>Woodforest Square, LLC<br><br>15233 Ventura Blvd., 9th Floor<br>Sherman Oaks, CA 91403<br>Phone: 818-539-7720<br>Fax: 818-436-0729<br>Email: dgottlieb@dkgallc.com |
| With a copy to: | Linda F. Cantor Esq.<br>Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Blvd. 13th Floor<br>Los Angeles, CA 90067<br>Phone: 310-277-6910<br>Fax: 310-201-0760<br>Email: lcantor@pszjlaw.com |

24.   **Merger.**   This Agreement, together with exhibits, constitutes the entire agreement between the parties pertaining to the subject matter contained in this Agreement. All prior and contemporaneous agreements, representations and understandings, written or oral, are superseded by and merged into this Agreement. No supplement, modification or amendment of this Agreement shall be binding unless in writing and executed by Buyer and Seller.

25.   **Time of the Essence.**   With regard to all of the provisions contained in this Agreement, time is of the essence.

26.   **Further Documentation.**   Each party agrees in good faith to cooperate with the other and execute such further or additional documents as may be necessary or appropriate to fully carry out the intent and purpose of this Agreement.

27.   **Governing Law; Bankruptcy Court Jurisdiction.**   This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas without regard to any conflict of laws rules. The Bankruptcy Court shall retain

11

jurisdiction to determine any disputes or other matters that may arise relating to this Agreement.

28. <u>Severability</u>. In the event one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision herein, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

29. <u>Waivers</u>. The waiver by any party hereto of any right granted to it hereunder shall not be deemed to be a waiver of any other right granted herein, nor shall same be deemed to be a waiver of a subsequent right obtained by reason of the continuation of any matter previously waived.

30. <u>Attorneys' Fees</u>. Each party shall bear their own costs in any litigation, arbitration or other proceedings arising out of this Agreement for all costs and expenses incurred in such proceedings, including attorneys' fees.

31. <u>Counterparts; Duplicate Originals; Facsimile Signatures</u>. This Agreement may be executed in multiple counterparts and when a counterpart has been executed by each of the parties hereto, such counterparts, taken together, shall constitute a single Agreement. Duplicate originals may also be utilized, each of which shall be deemed an original document. If any party executes this Agreement by facsimile or any other electronic means, such execution shall be binding against such party and shall be enforced by any court as if such party delivered a manually signed counterpart to the recipient, and the delivering party shall not object to the effectiveness or validity of this Agreement on the basis of such facsimile or electronic signature not being a manually signed original.

32. <u>Time for Performance</u>. The time for performance of any obligation or any other action under this Agreement shall be deemed to expire at 5:00 p.m., Pacific Time, on the last day of the applicable time period provided for herein. However, if the time for the performance of any obligation or other action under this Agreement expires on a Saturday, Sunday or California or federal legal holiday, the time for performance shall be extended to the next succeeding day which is not a Saturday, Sunday or legal holiday ("business day"). If the Closing Date falls on a Monday or any day immediately following a legal holiday, it shall be automatically extended to the next business day.

SELLER: _____

Woodforest Square, LLC, Chapter 11 Debtor
and Debtor-in-Possession in Case No. 14-12682, pending in the U.S. Bankruptcy Court
for the Central District of California

By: David K. Gottlieb, solely in his capacity
as Chapter 7 Trustee of the Bankruptcy
Estate of Roger W. Meyer, Managing
Partner of RCD Holdings, sole member of
Woodforest Square, LLC,

BUYER:

WRE Management LLC,
a Texas limited liability company

By: _____

The provisions of this Agreement are
hereby acknowledged and agreed to by
Escrow Holder on _____, 2014:

Chicago Title Company

By: _____
Name: _____
Its: _____

13

# EXHIBIT A

# LEGAL DESCRIPTION

1

**Exhibit A**

Tract 1 -FEE SIMPLE:

Being a tract of land containing 1.778 acres (77,461 square feet) out of the Samuel Hiroms League, A-33, Harris County, Texas. Said 1.778 acre tract being a portion of Unrestricted Reserve "H", Riviera East Village, Section Three as recorded in Volume 300, Page 120 of the Map Records of Harris County, Texas, also being the same land conveyed to T/M Woodforest, Ltd. as recorded under Harris County Clerk's File No. S236885, Film Code No. 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 of the Official Public Records of Real Property in Harris County, Texas. Said 1.778 acre tract being more particularly described by metes and bounds as follows, with the basis-of-bearings being the east right-of-way line of Normandy Street (based on a 100-foot width):

COMMENCING at a 5/8 inch iron rod found for the southerly corner of a 10-foot right-of-way cutback corner at the intersection of the east right-of-way line of said Normandy Street with the south right-of-way line of Woodforest Boulevard (based on a 100-foot width), for a northwest corner of said Unrestricted Reserve "H";

THENCE South 00 deg. 30 min. 30 sec. West, along the east right-of-way line of said Normandy Street, a distance of 355.69 feet to a 5/8 inch iron rod with cap stamped "WEISSER ENG. HOUSTON TX" set in the east right-of-way line of said Normandy Street for the northwest corner and POINT OF BEGINNING of the tract herein described;

THENCE South 89 deg. 29 min. 30 sec. East, leaving the east right-of-way line of said Normandy Street, a distance of 169.05 feet to an "X" cut in concrete set for a northeast corner of the said tract herein described;

THENCE South 00 deg. 30 min. 30 sec. West, along an east line of the said tract herein described, a distance of 121.91 feet to an "X" cut in concrete set for an interior corner of the said tract herein described;

THENCE South 89 deg. 29 min. 30 sec. East, along a north line of the said tract herein described, a distance of 29.50 feet to an "X" cut in concrete set for a northeast corner of the said tract herein described;

THENCE South 00 deg. 30 min. 30 sec. West, along a north line of the said tract herein described, a distance of 137.55 feet to a point for a southeast corner of the said tract herein described;

THENCE North 89 deg. 29 min. 30 sec. West, along a south line of the said tract herein described, a distance of 10.50 to an "X" cut in concrete set for an interior corner of the said tract herein described;

THENCE South 00 deg. 30 min. 30 sec. West, along an east line of the said tract herein described, a distance of 131.78 feet to an "X" cut in concrete set for a southeast corner of the said tract herein described;

THENCE North 89 deg. 29 min. 30 sec. West, along a south line of the said tract herein described;, a distance of 28.75 feet to an "X" cut in concrete set for an interior corner of the said tract herein described;

THENCE South 00 deg. 30 min. 30 sec. West, along an east line of the said tract herein described, a distance of 33.73 feet to an "X" cut in concrete set in the north right-of-way line of La Grove Lane (based on a 60-foot width) for a southeast corner of the said tract herein described;

THENCE North 86 deg. 55 min. 49 sec. West, along the north right-of-way line of said La Grove Lane, a distance of 149.82 feet to a 5/8 inch iron rod with cap stamped "WEISSER ENG. HOUSTON TX" set for the south end of a 10-foot right-of-way cutback corner at the intersection of the north right-of-way line of said La Grove Lane with the east right-of-way line of said Normandy Street for a southwest corner of the said tract herein described;

THENCE North 42 deg. 27 min. 50 sec. West, with said 10-foot right-of-way cutback corner, a distance of 14.47 feet to a 5/8 inch iron rod with cap stamped "WEISSER ENG. HOUSTON TX" set for the north end of the said 10-foot right-of-way cutback corner located at the east right-of-way line of said Normandy Street for a southwest corner of the said tract herein described, in a curve to the left;

THENCE in a northeasterly direction with said curve to the left having a radius of 2,003.74 feet, a central angle of 00 deg. 52 min. 46 sec., a chord bearing of North 00 deg. 56 min. 33 sec. East, a chord distance of 30.76 feet, a curve length of 30.76 feet to a 5/8 inch iron rod with cap stamped "WEISSER ENG. HOUSTON TX" set for an angle point of the said tract herein described and the end of said curve;

THENCE North 00 deg. 30 min. 30 sec. East, along the east right-of-way line of said Normandy Street, a distance of 376.93 feet to the POINT OF BEGINNING and containing 1.778 acres (77,461 square feet) of land.


Tract 2 -FEE SIMPLE:

Being a tract of land containing 3.108 acres (135,397 square feet) out of the Samuel Hiroms League, A-33, Harris County, Texas. Said 3.108 acre tract being a portion of Unrestricted Reserve "H", Riviera East Village, Section Three as recorded in Volume 300, Page 120 of the Map Records of Harris County, Texas, also being the same land conveyed to T/M Woodforest, Ltd. as recorded under Harris County Clerk's File No. S236885, Film Code No.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 of the Official Public Records of Real Property in Harris County, Texas. Said 3.108 acre tract being more particularly described by metes and bounds as follows, with the basis-of-bearings being the east right-of-way line of Normandy Street (based on a 100-foot width):

BEGINNING at a 5/8 inch iron rod with cap stamped "WEISSER ENG. HOUSTON TX" set in the north right-of-way line of La Grove Lane (based on a 60 foot width), for a southwest corner of Riviera East Subdivision, Section One as recorded in Volume 223, Page 39 of the Map Records of Harris County, Texas, for the southeast corner of said Unrestricted Reserve "H" and for the southeast corner of the tract herein described;

THENCE North 86 deg. 55 min. 49 sec. West, along the north right-of-way line of said La Grove Lane, a distance of 146.80 feet to an "X" cut in concrete set in the north right-of-way line of said La Grove Lane for a southwest corner of the said tract herein described;

THENCE North 00 deg. 30 min. 30 sec. East, leaving the north right-of-way line of said La Grove Lane, a distance of 81.78 feet to an "X" cut in concrete set for an interior corner of the said tract herein described;

THENCE North 89 deg. 29 min. 30 sec. West, along a south line of the said tract herein described, a distance of 108.42 feet to an "X" cut in concrete set for a southwest corner of the said tract herein described;

THENCE North 00 deg. 30 min. 30 sec. East, along a west line of the said tract herein described, a distance of 241.31 feet to an "X" cut in concrete set for an interior corner of the said tract herein described;

THENCE North 89 deg. 29 min. 30 sec. West, along a south line of the said tract herein described, a distance of 5.50 to an "X" cut in concrete set for a southwest corner of the said tract herein described;

THENCE North 00 deg. 30 min. 30 sec. East, along a west line of the said tract herein described, a distance of 266.09 feet to an "X" cut in concrete set for the northwest corner of the said tract herein described;

THENCE South 89 deg. 29 min. 30 sec. East, along the north line of the said tract herein described, a distance of 212.06 feet to a 5/8 inch iron rod with cap stamped "WEISSER ENG. HOUSTON TX" set in the west line of said Riviera East Subdivision, Section One for the northeast corner of the said tract herein described;

THENCE South 08 deg. 36 min. 44 sec. East, along the west line of said Riviera East Subdivision, Section

One, a distance of 278.54 feet to a 5/8 inch iron rod with cap stamped "WEISSER ENG. HOUSTON TX" set in the west line of said Riviera East Subdivision, Section One for an angle point of the said tract herein described;

THENCE South 00 deg. 16 min. 16 sec. East, along the west line of said Riviera East Subdivision, Section One, a distance of 320.77 feet to the POINT OF BEGINNING and containing 3.108 acres (135,397 square feet) of land.

Tract 3 -FEE SIMPLE

Being a tract of land containing 1.180 acres (51,414 square feet) out of the Samuel Hiroms League, A-33, Harris County, Texas. Said 1.180 acre tract being a portion of Unrestricted Reserve "H", Riviera East Village, Section Three as recorded in Volume 300, Page 120 of the Map Records of Harris County, Texas, also being the same land conveyed to T/M Woodforest, Ltd. as recorded under Harris County Clerk's File No. S236885, Film Code No. 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 of the Official Public Records of Real Property in Harris County, Texas. Said 1.180 acre tract being more particularly described by metes and bounds as follows, with the basis-of-bearings being the east right-of-way line of Normandy Street (based on a 100-foot width):

BEGINNING at an "X" cut in concrete set in the south right-of-way line of Woodforest Boulevard (based on a 100 foot width) , for the northwest corner of Unrestricted Reserve "G" of said Riviera East Village, Section Three, for the northeast corner of said Unrestricted Reserve "H" and for the northeast corner of the tract herein described;

THENCE South 19 deg. 52 min. 54 sec. East, leaving the south right-of-way line of said Woodforest Boulevard, a distance of 240.84 feet to a 5/8 inch iron rod with cap stamped "WEISSER ENG. HOUSTON TX" set for the southwest corner of said Unrestricted Reserve "G", for the northwest corner of Riviera East Subdivision, Section One as recorded in Volume 223, Page 39 of the Map Records of Harris County, Texas, for an angle point of the said tract herein described;

THENCE South 08 deg. 36 min. 49 sec. East, along the west line of said Riviera East Subdivision, Section One, a distance of 86.86 feet to a 5/8 inch iron rod with cap stamped "WEISSER ENG. HOUSTON TX" set in the west line of said Riviera East Subdivision, Section One, for the southeast corner of the said tract herein described;

THENCE North 89 deg. 29 min. 30 sec. West, along the south line of the said tract herein described, a distance of 212.06 feet to an "X" cut in concrete set for the southwest corner of the said tract herein described;

THENCE North 00 deg. 30 min. 30 sec. East, along the south line of the said tract herein described, a distance of 220.72 feet to an "X" cut in concrete set for an angle point of the said tract herein described;

THENCE North 12 deg. 51 min. 00 sec. West, along a west line of the said tract herein described, a distance of 57.64 feet to an "X" cut in concrete set in the south right-of-way line of said Woodforest Boulevard for the northwest corner of the said tract herein described, in a curve to the left;

THENCE in a northeasterly direction with said curve to the left having a radius of 2,050.00 feet, a central angle of 03 deg. 41 min. 57 sec., a chord bearing of North 75 deg. 18 min. 01 sec. East, a chord distance of 132.33 feet, a curve length of 132.35 feet to the POINT OF BEGINNING and containing 1.180 acres (51,414 square feet) of land.

Tract 4 -EASEMENT ESTATE:

Easement estate created in Declaration of Reciprocal Easements, Restrictions and Agreements dated December 6, 1996, filed for record under Harris County Clerk's File No(s). S236886, by and between T/M Woodforest, Ltd., a Texas limited partnership, Norwood Partners, Ltd., a Texas limited partnership, and The Kroger Co., an Ohio corporation.